*Decision will be entered under Rule 50.*

GEORGE F. BAKER, JR., EXECUTOR OF THE ESTATE OF GEORGE F. BAKER, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52097. Promulgated July 18, 1933.

*R. N. Anderson, Esq.,* for the petitioner.
*Harold Allen, Esq.,* and *L. H. Rushbrook, Esq.,* for the respondent.

cash and bonds.

OPINION.

SMITH: The question presented by this proceeding is whether the decedent is liable to income tax in respect of the entire amount of $665,000 received by him in 1926 as dividends from the New Jersey General Security Co. The petitioner admits that the dividends are taxable to the extent of 61.098 percent of the amount thereof, but claims that the balance represented a return of capital and hence is not taxable.

In so far as material to our determination the statute and regulations are as follows:

SEC. 201. (a) The term "dividend" when used in this title (except in paragraph (9) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204. [Revenue Act of 1926.]

ART. 1541. *Dividends.*—Dividends for the purpose of Title II comprise any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of its earnings or profits accumulated since February 28, 1913. Although interest on State bonds and certain other obligations is not taxable when received by a corporation, upon amalgamation with the other funds of the corporation

such income loses its identity and when distributed to shareholders in dividends is taxable to the same extent as other dividends.

\* \* \* \* \* \* \*

ART. 1542. *Source of distribution.*—For the purpose of income taxation every distribution made by a corporation is made out of earnings or profits to the extent thereof and from the most recently accumulated earnings or profits. [Regulations 69.]

In his brief the petitioner states that the respondent found that the New Jersey General Security Co. had accumulated earnings and profits since March 1, 1913, which it had not distributed as of December 31, 1925, of $2,594,973.44 and had earned during the calendar year 1926 the amount of $555,790.98, which sums the petitioner admits were ample with which to make distributions to its stockholders during the year 1926 of $2,631,804 paid by it. The petitioner contends, however, that there should be excluded from the total of the undistributed earnings two items of $384,223.26 and $1,158,458.28, respectively.

The $384,223.26 item represents advances made by the New Jersey General Security Co. to the Jersey City Water Supply Co. which the petitioner on its books of account charged as expenses or losses of the years in which the payments were made. The advances made in the year 1923 were claimed as deductions from gross income in the Federal income tax return of the New Jersey General Security Co. for 1923, and allowed as a deduction in the audit by the respondent. The advances made for 1924 and 1925 were likewise claimed as deductions from gross income in the returns of the New Jersey General Security Co. for those years, but disallowed by the respondent. The advances made in 1926 were not claimed as a deduction by that company in its return for 1926. The amounts were advanced in accordance with the surety agreement of the New Jersey General Security Co. dated February 28, 1913, which provides, *inter alia:*

\* \* \* It is not hereby understood that this said payment of $115,000 is in full settlement of any such claims for all time, but it is understood that the party of the second part [New Jersey General Security Co.] may have further recourse upon the party of the first part, in such sums of money as they may later receive, in order to indemnify themselves more fully against the present liabilities and against future liabilities.

We are of the opinion that the respondent did not err in including in the earnings of the New Jersey General Security Co. accumulated since February 28, 1913, the $384,223.26. In *Glendinning, McLeish & Co.*, 24 B.T.A. 518, this Board held that advances made by a corporation under a contract which provided for repayment were not in the circumstances of that case deductible as expenses.

The Board's decision was affirmed by the Circuit Court of Appeals for the Second Circuit, 61 Fed. (2d) 950, the court stating:

Being advances made by the petitioner in accordance with its agreement to make them and the agreement of the Belfast company to repay them, the amounts here involved were not within the statute permitting the deduction of ordinary and necessary business expenses since they could not be expenses of any kind provided the petitioner could and did enforce its right to reimbursement. * * * The agreement for reimbursement made them at least advances on the credit of the Belfast company and requires that they be so treated in computing the net income of the petitioner. As such they were not deductible. *Cohen* v. *Commissioner*, 39 Fed. (2d) 540; *Island Petroleum Company* v. *Commissioner*, 57 Fed. (2d) 992.

In the circumstances of this case, we are of opinion that the advances made by the New Jersey General Security Co. for the years above cited were not deductible items of the years in which paid and that they did not serve to reduce its income.

The petitioner's contention with respect to the $1,158,458.28 item is that the $1,200,000 dividend paid by the Passaic Consolidated Water Co. to the New Jersey General Security Co. on November 18, 1924, was "a distribution in liquidation of the Montclair Water Co. property then owned by the Passaic Consolidated Water Co.", and that as such it could not constitute a part of the earnings of the New Jersey General Security Co. in so far as it represented a distribution of the capital of the Montclair Water Co. or of the earnings of that company accumulated prior to March 1, 1913. It is further contended that the only earnings of the Passaic Consolidated Water Co. accumulated since February 28, 1913, are those resulting from its own operations subsequent to October 31, 1923, to the dates the dividends were paid in 1924, which the petitioner submits were far less than the dividends paid. The petitioner then attempts to show, by the respondent's computation set forth in our findings, that $1,158,-458.28 of the dividends paid by the Passaic Consolidated Water Co. in 1924 was not from earnings accumulated by it.

The petitioner makes this contention by virtue of article 1543 of Regulations 65, promulgated under the provisions of the Revenue Act of 1924, which, so far as material, provides:

* * * Whenever one corporation receives from another corporation distributions out of earnings or profits accumulated by such other corporation prior to March 1, 1913, or out of increase in value of its property accrued prior to March 1, 1913, and the "receiving" corporation, after having first distributed all of its earnings and profits accumulated since February 28, 1913, distributes to its stockholders the amount so received by it from such other corporation, the distribution by the "receiving" corporation to its stockholders is not a dividend within the meaning of the Act and is exempt from tax.

Substantially the same provision is found in article 1543 of Regulations 69, promulgated under the provisions of the Revenue Act of

1926. In *Arthur Curtiss James*, 13 B.T.A. 764, this Board held, in a situation parallel to the present case but involving the Revenue Act of 1918:

The distributions made by the subsidiary to the parent in 1918 from sources other than earnings accrued subsequent to February 28, 1913, are to be regarded for tax purposes as in the nature of a return to the parent of a part of the amount invested or of the March 1, 1913, value of its investment and are not a part of the earnings or profits of the parent; at least until there is a gain to the parent by reason of a return to it of amounts in excess of the cost or March 1, 1913, value of the stock. * * *

We held in that case that the portion of the dividend paid over to the petitioner by the Phelps Dodge Corporation, which had been received by that corporation from the Moctezuma Copper Co. out of earnings accumulated by the latter prior to March 1, 1913, was tax-exempt in the hands of the petitioner. Our decision was affirmed by the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *James*, 49 Fed. (2d) 707. In the course of its opinion the court stated that a question was submitted by the Commissioner, but not argued, as to the treatment of sums paid by Moctezuma Copper Co. to the Phelps Dodge Corporation during 1918. The court said, however, that it did not decide the question of the legality of the Board's ruling since the Commissioner made no contention that his regulation in this regard was incorrect and that the taxpayer was content with the result.

A fair question might be raised as to whether the dividends received by the New Jersey General Security Co. in 1924 from the Passaic Consolidated Water Co. did not, in their entirety, constitute earnings of the New Jersey General Security Co. accumulated subsequent to February 28, 1913, since the dividends were paid in ordinary course, and under the decision of the Supreme Court in *Lynch* v. *Hornby*, 237 U.S. 339, such dividends constituted taxable income of the recipient. In *Caroline S. McLean*, 4 B.T.A. 487, we said:

A dividend is none the less income to the stockholder though a distribution of earnings accumulated by the corporation prior to March 1, 1913, and is taxable in the absence of express statutory exemption. * * *

In the circumstances of this proceeding we do not find ourselves under the necessity of passing upon the validity of the Commissioner's regulation above referred to. For, in any event, we think that the Passaic Consolidated Water Co. had earnings accumulated subsequent to February 28, 1913, in excess of the amount of the dividends paid by that company to the New Jersey General Security Co. in 1924.

In the first place it should be noted that the earnings of the Passaic Consolidated Water Co. accumulated subsequent to February

28, 1913, as computed by the respondent, did not take into account a write-up in the assets of the Montclair Water Co. of $761,415.80 at the time of the organization of the Passaic Consolidated Water Co. in 1923. This write-up in the assets of the Montclair Water Co. at the time they were transferred to the Passaic Consolidated Water Co. was apparently overlooked by the respondent at the time he made his computation of the available earnings of the Passaic Consolidated Water Co. for the payment of dividends in 1924. It is evident, however, from perusal of the schedules attached to the consolidated returns of the New Jersey General Security Co. for the years 1923 and 1924, which were introduced in evidence, that this write-up actually took place and a witness for the petitioner admitted that the properties of the several water companies transferred to the Passaic Consolidated Water Co. on October 31, 1923, were appreciated on the books of that company to correspond with appraisals made at or about that time over the amounts shown to be their cost or value on the books of the constituent companies. When the Passaic Consolidated Water Co. sold the Montclair distribution system this write-up in value was received in cash and to the extent that the amount received was in excess of the basis before the write-up it constituted income; for the basis for the computation of gain or loss upon the sale was the same basis which would have applied to the Montclair Water Co. had it made the sale itself prior to the consolidation. Sec. 204 (a), Revenue Act of 1924. The undistributed earnings of the Passaic Consolidated Water Co. on January 1, 1924, were therefore $761,415.80 greater than the amount computed by the respondent.

It is furthermore to be noted from our findings that upon the organization of the Passaic Consolidated Water Co. the undistributed earnings of the five constituent companies accumulated subsequent to February 28, 1913, were $1,142,031.05. The petitioner's contention is that these earnings were capitalized by the organization of the Passaic Consolidated Water Co. and were not a part of *its* earnings accumulated subsequent to February 28, 1913. The respondent contends, however, that they constituted a part of those earnings. He relies upon the decision of the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 53 S.Ct. 291, in which the court held that where a corporate reorganization results in no " gain or loss " under section 202 (c) (2) of the 1921 Act, the company's life as a continued venture does not stop under section 201, so that what were " earnings or profits " of the original or subsidiary company remain, for purposes of distribution, " earnings or profits " of the successor or parent. In the course of its opinion, the court stated:

* * * Section 201 [Revenue Act of 1921] was passed, in some measure at least, to fix what should come into the computation of " gain or loss " ; it allowed all payments except those cut out by subdivision c. It appears to us extremely unlikely that what was not " recognized " as a sale or disposition for the purpose of fixing gain or loss, should be " recognized " as changing accumulated profits into capital in a section which so far overlapped the latter. That in substance declared that some corporate transactions should not break the continuity of the corporate life, a troublesome question that the courts had beclouded by recourse to such vague alternatives as " form " and " substance," anodynes for the pains of reasoning. The effort was at least to narrow the limits of judicial inspiration, and we cannot think that the same issue was left at large in the earlier section. Hence we hold that a corporate reorganization which results in no " gain or loss " under section 202 (c) (2) (42 Stat. 230) does not toll the company's life as continued venture under section 201, and that what were " earnings or profits " of the original, or subsidiary, company remain, for purposes of distribution, " earnings or profits " of the successor, or parent, in liquidation * * *.

The Circuit Court of Appeals for the Ninth Circuit reached a like conclusion in *United States* v. *Kauffmann*, 62 Fed. (2d) 1045. The petitioner contends that the *Sansome* and *Kauffmann* decisions are not applicable to the situation presented here for the reason that those cases were decided under the provisions of the Revenue Act of 1921, which the petitioner contends are substantially different from the provisions of the 1924 Act. From a careful study of the statutes we are of the opinion that the alleged differences are not substantial. Clearly the organization of the Passaic Consolidated Water Co. on October 31, 1923, did not give rise to any recognized gain or loss to any of the companies involved. Sec. 202 (c), Revenue Act of 1921. Upon the legal principle laid down in those cases the undistributed earnings of the constituent companies became the undistributed earnings of the Passaic Consolidated Water Co. When, therefore, that company paid dividends those dividends were paid out of earnings or profits to the extent thereof and from the most recently accumulated earnings or profits as provided by section 201 (b) of the Revenue Act of 1924. We find that the undistributed earnings of the Passaic Consolidated Water Co. accumulated subsequent to February 28, 1913, were greatly in excess of the amounts necessary to pay the dividends which were declared and paid by that company in 1924. Such being the case, all of the dividends paid by the New Jersey General Security Co. in 1926 were from earnings accumulated subsequent to February 28, 1913, and the $665,000 dividends received by the decedent in 1926 from the New Jersey General Security Co. are subject to surtax.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*